IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. MILTON JONES, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 2057 |
| TERRY McCANN, | ) ) | The Honorable Elaine E. Bucklo, |
| Respondent. | ) | Judge Presiding. |

## <u>ANSWER</u>

  Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent Terry McCann submits his answer to petitioner's petition for writ of habeas corpus and states as follows:

## BACKGROUND

  1. Petitioner Milton Jones is identified as prisoner R29598 and is in the custody of Terry McCann, Warden of Stateville Correctional Center in Joliet, Illinois.

  2. On February 27, 2004, following a jury trial in the Circuit Court of Cook County, petitioner was convicted of three counts of first degree murder and two counts of aggravated kidnaping. (Exh. E at 1).  The trial court sentenced petitioner to 25 years' imprisonment on the murder convictions (to run concurrently with each other) and to six years' imprisonment on each of the aggravated

kidnaping convictions (to run concurrently with each other, but consecutively to the

25-year sentence on the murder convictions).  (*Id.*).

3.      Petitioner's counsel filed a motion for a new trial, and petitioner filed a

separate pro se motion for a new trial, alleging he was not proven guilty beyond a

reasonable doubt, and that he was denied the effective assistance of trial counsel

because counsel:

    a.    failed to discover information missing from discovery that
surprised counsel and petitioner during trial;

    b.    failed to retain an investigator to interview witnesses or
investigate statements in the police reports;

    c.    failed to visit petitioner to prepare him for trial;

    d.    failed to provide any meaningful consultation with petitioner;

    e.    failed to keep petitioner informed of the current status of the
case;

    f.    failed to prepare and file pretrial motions requested by
petitioner;

    g.    failed to investigate or interview any witnesses, or investigate
statements from the witnesses set forth in supplementary
reports for the prosecution;

    h.    failed to return telephone calls from material defense witnesses;

    i.    failed to subpoena and/or contact other people involved in the
case to appear in court at any time;

    j.    failed to use evidence provided by petitioner to be used in
motions or at trial;

    k.    failed to investigate facts and circumstances surrounding the
charges or the "pro's and con's of a plea agreement or going to
trial;" and

2

l.      failed to keep petitioner's family informed about the case.

(Exh. A at 1-3).  The trial judge denied both the counseled and pro se motion for a

new trial.  (Exh. E at 11-13).

4.      Petitioner appealed to the Illinois Appellate Court, First District,

presenting the following issues:

a.      petitioner was denied a fair trial when the prosecuting attorney
(i) tried to impeach petitioner's testimony with personal opinion;
(ii) alleged facts not properly in evidence; and (iii) asked jurors
in closing argument to put themselves in the victim's position
and imagine their "worst nightmare;"

b.      the trial court erred when it did not appoint new counsel to
represent petitioner on his post-trial motion after petitioner
alleged a colorable claim that trial counsel rendered ineffective
assistance by not investigating certain witnesses; and

c.      the trial court erred in failing to conduct a fitness hearing after
petitioner raised a bona fide doubt concerning his fitness by
revealing that he was no longer taking his prescribed
medications.

(Exhs. B-D).  On June 9, 2006, the state appellate court affirmed petitioner's

convictions and sentences.  (Exh. E).

5.      On August 29, 2006, petitioner filed a petition for leave to appeal

(PLA) to the Illinois Supreme Court alleging that the trial court erred when it did

not appoint counsel to represent him on his post-trial motion claim that trial

counsel rendered ineffective assistance by not investigating certain witnesses.

(Exh. F).  The PLA argued that the state appellate court erred in concluding that

the trial court had conducted an adequate inquiry into petitioner's pro se ineffective

assistance claims before declining to appoint new counsel for petitioner's post-trial

3

motion.  (*Id*. at 3).  On November 29, 2006, the Illinois Supreme Court denied the

PLA.  (Exh. G).

      6.     On October 31, 2006, petitioner filed a federal habeas corpus petition

in this Court, docketed as No. 06 C 5922.  The petition presented the following four

claims:

    a.     the trial court failed to adequately inquire into petitioner's pro se allegations of ineffective assistance of counsel for failing to investigate certain witnesses before declining to appoint new counsel to represent petitioner on his post-trial motion;

    b.     the sentences imposed by the trial court are manifestly disproportionate;

    c.     trial counsel was ineffective for failing to call (unspecified) witnesses; and

    d.     the trial court misconstrued the law of accountability, and the indictment charging petitioner with first degree murder did not make any reference to a theory of accountability.

(No. 06 C 5922, Doc. 1).

      7.     On January 3, 2007, respondent filed a motion to dismiss the 2006

petition without prejudice for failure to exhaust state remedies because petitioner

had not filed a state postconviction action, and time still remained for him to do so.

(No. 06 C 5922, Doc. 13).  On April 12, 2007, after further briefing, this Court

granted that motion.  (06 C 5922, Doc. 21).

      8.     On June 4, 2007, petitioner filed a pro se postconviction petition

pursuant to 725 ILCS 5/122-1, *et seq*., in the Circuit Court of Cook County

asserting:

a.   trial counsel was ineffective for failing to (i) call alibi witnesses, (ii) provide meaningful consultation and show discovery to petitioner, (iii) prepare him for trial, and (iv) request a fitness hearing; and

b.   he was denied due process when additional instructions were given to the jury without his knowledge or presence.

(Exh. H).  On August 8, 2007, the state trial court dismissed the postconviction petition as frivolous and patently without merit.  (Exh. I).

9.    Petitioner did not timely appeal the dismissal of his state postconviction petition.  (Pet. at 3).[1]  Petitioner filed a late notice of appeal on November 11, 2007.  (Exh. K at 12).  On November 16, 2007, the circuit court denied leave to file the late notice of appeal.  (Exh. K at 13; Exh. J).

10.    On April 10, 2008, petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2254, raising the following claims:

(a)   the trial court failed to adequately inquire into petitioner's pro se allegations of ineffective assistance of counsel for failing to investigate certain witnesses before declining to appoint new counsel to represent petitioner on his post-trial motion;

(b)   the trial court erred in failing to conduct a fitness hearing after petitioner raised a bona fide doubt concerning his fitness by revealing that he was no longer taking his prescribed medications; and

(c)   petitioner was denied a fair trial when the prosecuting attorney: (i) tried to impeach petitioner's testimony with personal opinion; (ii) alleged facts not properly in evidence; and (iii) asked jurors

---

[1]  On May 9, 2008, respondent telephoned the Office of the Clerk of the Illinois Appellate Court, First District, and confirmed that no appeal was taken from the dismissal of petitioner's state postconviction petition.

in closing argument to put themselves in the victim's position
and imagine their "worst nightmare."

(Pet. at 5-6b).

11.    Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the

United States District Courts, respondent has manually filed the following state

court materials contemporaneously under separate cover:

Exhibit A:    Petitioner's pro se post-trial motion, *People v. Jones*, No.
01 CR 18654-01;

Exhibit B:    Petitioner's brief on direct appeal, *People v.
Jones*, No. 1-04-1359;

Exhibit C:    State's brief on direct appeal, *People v. Jones*,
No. 1-04-1359;

Exhibit D:    Petitioner's reply brief on direct appeal, *People v.
Jones*, No. 1-04-1359;

Exhibit E:    Ruling of the Illinois Appellate Court in petitioner's direct
appeal, *People v. Jones*, No. 1-04-1359, filed 6/9/06 (unpublished
order under Illinois Supreme Court Rule 23);

Exhibit F:    Petitioner's PLA on direct appeal, *People v.
Jones*, No. 103294;

Exhibit G:    Order of the Illinois Supreme Court denying petitioner's PLA on
direct appeal,  *People v. Jones*, No. 103294, filed 11/29/06;

Exhibit H:    Petitioner's postconviction petition, *People v. Jones*, No. 01 CR
18654-01;

Exhibit I:    Order dismissing petitioner's postconviction petition,
*People v. Jones*, No. 01 CR 18654-01;

Exhibit J:    Docket order denying petitioner's late notice of appeal, *People v.
Jones*, No. 01 CR 18654-01; and

Exhibit K:    Cook County Docket Sheet in *People v. Jones*, No. 01 CR 18654-01

12.    Upon information and belief, transcripts of the reports of proceedings are available for the proceedings held in the Cook County Circuit Court as set forth in the appendix to petitioner's brief on direct appeal.  (Exh. A at A2-A5).  These transcripts are maintained by the Circuit Clerk of Cook County.  Respondent is unaware of any proceedings that were recorded but not transcribed.  Respondent believes that none of these transcripts is necessary for a fair determination of this cause.  *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) (pursuant to Rule 5, the State need only submit those portions of the state court record it deems relevant and review of the state court transcript is quite rare); *Green v. Greer*, 667 F.2d 585, 590 (7th Cir. 1981) (an examination of the state record is not required if the petitioner fails to identify any incompleteness or inaccuracies in the facts before the district court).

## TIMELINESS

Respondent believes that the instant habeas petition is timely under 28 U.S.C. § 2244(d)(1)(A), (2).

## EXHAUSTION AND PROCEDURAL DEFAULT

In order to validly present a claim to this Court for habeas review, a petitioner must exhaust all of his state court remedies.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  A federal court cannot address the merits of constitutional claims brought in a petition for habeas corpus relief unless the state courts have had a full

and fair opportunity to review those claims. *Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998). Before addressing a petition on the merits, a federal habeas court must inquire both whether a petitioner has exhausted all available state remedies and raised all his claims during the course of the state proceedings. If the petitioner has failed to meet either of these requirements, the court is barred from reaching the merits of the habeas claims. *Moore*, 148 F.3d at 708.

A claim is exhausted when it has been presented to the highest state court for a ruling on the merits or when no state remedies remain available to the petitioner. *Id.* Petitioner has exhausted his state remedies because he pursued his direct appeal to the state supreme court (Exhs. E, F), and has no further state court avenues of review on the issues raised in his habeas petition. *See* 725 ILCS 5/122-1, *et seq*.

However, two of petitioner's three claims are defaulted. In order to preserve a claim for federal habeas review, a petitioner must raise the same claim in the state courts. *Bocian v. Godinez*, 101 F.3d 465, 468-69 (7th Cir. 1996) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Specifically, whether the claim is raised on direct appeal or in a collateral action, a state prisoner must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appeals process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). That is, to provide the state courts with the

necessary opportunity to address his claims, a prisoner must fairly present those claims to each appropriate state court. *Baldwin*, 541 U.S. at 29; *Perruquet v. Briley*, 390 F.3d 505, 513-14 (7th Cir. 2004). In short, any claims that petitioner did not present to the Illinois Appellate Court and the Illinois Supreme Court in one complete round of appellate review are defaulted.

On direct appeal, petitioner argued to the state appellate court the same three claims raised in the instant habeas application. (Exh. A). But, in his subsequent PLA, petitioner argued only that the trial court had conducted an inadequate inquiry into his pro se ineffective assistance claims before declining to appoint new counsel for petitioner's post-trial motion (Claim 1). (Exh. F). Also, petitioner took no appeal from the dismissal of his state postconviction petition. (Pet. at 3). Therefore, petitioner's claims that the trial court improperly failed to hold a fitness hearing (Claim 2) and that the prosecutor made improper argument to the jury (Claim 3) are defaulted because they were not presented for one full round of state court review.

Petitioner's Claim 3 is defaulted in a second way. On direct appeal, the state appellate court held that petitioner's allegations of improper comments by the prosecutor had been forfeited because they had not been presented to the trial court in a post-trial motion as required by Illinois law. (Exh. E at 13-14). A federal habeas court will not review a question of federal law if the state court decision on the issue rests on state law grounds that are independent of the federal question and adequate to support the judgment. *Rodriguez v. McAdory*, 318 F.3d 733, 735

9

(7th Cir. 2003); *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The fact that, as here, the state court reviews an issue for plain error does not cure this default.  *Rodriguez*, 318 F.3d at 735.  Therefore, petitioner's Claim 3 is also defaulted because the appellate court based its decision on an independent and adequate state procedural ground.

A habeas court may address an otherwise defaulted claim if the petitioner demonstrates either cause for the default and prejudice therefrom, or if he convinces the court that a fundamental miscarriage of justice would result if his claim is not addressed on the merits.  *Perruquet*, 390 F.3d at 514 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977), and *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).  "To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court."  *Perruquet*, 390 F.3d at 514-15.  "To establish prejudice, he must 'shoulder the burden of showing, not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitution dimensions.'"  *Id.* at 515 (emphasis added).  In order to establish a miscarriage of justice, a petitioner "must demonstrate that he is actually innocent of the crime for which he was convicted — that is, he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court."  *Id.* at 515 (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).  Further, the petitioner must present new evidence

10

showing his innocence for, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.  Petitioner has not specifically invoked either the cause and prejudice exception or the miscarriage of justice exception.  He has stated that Claims 2 and 3 were not presented to the Illinois Supreme Court "because Appellate Counsel dropped those issues, and the Petitioner was not capable of raising them himself, where he is mentally incompetent and medicated." (Pet. at 6).  He has also submitted a statement of facts and affidavit that suggest an argument that he is actually innocent.  (Pet. App. at 25-29).[2]  Even assuming these statements are an attempt to allege cause and prejudice and/or a fundamental miscarriage of justice, petitioner cannot prevail under either exception.

With regard to cause and prejudice, petitioner objected to the prosecutor's comments at trial and raised both of his defaulted claims in the state appellate court.  (Exh. B at 13-19, 26-28).  Therefore, absent an allegation that counsel was ineffective for not raising the claims, petitioner cannot credibly allege some external impediment that prevented him from raising the prosecutor's comments in a post-trial motion and from raising both of his defaulted claims in his PLA.  Petitioner's

---

[2]  Petitioner's appendix is not paginated.  Respondent will cite to that appendix as if it were numbered 1-33, beginning with the page following the page labeled "Appendix."

statement that appellate counsel "dropped" his defaulted issues does not allege that counsel was ineffective for doing so. (Pet. at 6). Also, while an allegation of the ineffective assistance of counsel can serve as "cause," in order to do so, that same ineffective assistance claim must have been preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-54 (2000). In sum, petitioner must have presented to each appropriate state court a claim that the issues he now raises were not preserved due to the ineffective assistance of counsel. Because he has not done so, any such claim is, itself, defaulted.

Likewise, petitioner's invocation of mental incompetence is insufficient to serve as cause. Initially, agreeing with several other circuits, the Seventh Circuit has held that a mental defect does not qualify as "cause" because it is not an external impediment. *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003). Furthermore, the record indicates that any inability due to mental incompetence resulted from petitioner's own actions. Petitioner was found fit for trial while taking his medication. (Pet. at 5c; Exh. E at 20-21). Sometime during the state trial court proceedings he voluntarily began taking only half of the prescribed dosage. (Pet. at 5c; Pet. App. at 6, 8; Exh. E at 20). Assuming he was taking only half-dosage of his medication, he should not be rewarded for his refusal. Moreover, his voluntary decision to take less than the prescribed dosages is not an "external impediment" for purposes of the cause analysis.

Also, the record indicates that any mental shortcomings of petitioner did not cause an inability to understand and work within the legal system. The

12

psychiatrist that examined petitioner stated that he was "alert, oriented, and able to assist in his defense," and that he "appear[ed] to be exaggerating his psychopathy and distorting his knowledge of the legal system."  (Exh. E at 21).  The appellate court noted that petitioner exhibited no unusual behavior at any point during the trial, gave lengthy, coherent and relevant testimony without any apparent difficulty, and submitted a neatly printed, 18-count, hand-written pro se motion for post-trial relief.  (Exh E at 21-22).  Therefore, petitioner's defaults should not be excused pursuant to the cause and prejudice exception.

A fundamental miscarriage of justice occurs when a petitioner can prove that a constitutional violation has resulted in the conviction of one who is actually innocent. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005).  In order to succeed on a miscarriage of justice claim, a petitioner must present new evidence of his innocence. *Schlup*, 513 U.S. at 316. This refers to "actual" innocence, as opposed to "legal" innocence.  *Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) (citing *Schlup*, 513 U.S. at 314-15); *Moleterno v. Nelson*, 114 F.3d 629, 636 (7th Cir. 1997) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  Petitioner bears the burden to show that, in light of the new evidence, no reasonable juror would have found him guilty absent the alleged errors. *House*, 547 U.S. at 536-37; *Schlup*, 513 U.S. at 316; *Perruquet*, 390 F.3d at 514-15. Petitioner cannot meet this burden, despite his allegation that there are exculpatory witnesses his counsel failed to investigate.  (Pet. at 5b).

Initially, petitioner cannot prevail under the fundamental miscarriage of justice exception because he has presented no new evidence. *See Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (new evidence is evidence that was not presented at trial). He asserts only that certain witnesses would establish that he was not involved in the kidnapings and murder for which he was convicted. He has presented no new evidence supporting his claim. Petitioner testified at trial that he was not involved in the actual kidnaping and murder. (Exh. E at 5-9). Thus, his like claims to this Court are not new. In his pro se post-trial motion, petitioner listed five witnesses whose testimony allegedly would have bolstered his defense. However, apart from his bald allegations, petitioner presented the state courts with no affidavits or other evidence that these witnesses would have testified as he claims. (Exhs. A, B, D, & F). Likewise, he has presented no evidence to this Court. (Pet., *generally*). Petitioner's failure to present any new evidence defeats his claim of actual innocence.

Even if petitioner's reassertion of his innocence and unsupported assertions that certain witnesses would support his claim are regarded as "new" evidence, he is not entitled to review of his defaulted claims pursuant to the fundamental miscarriage of justice exception. The two surviving victims (Lolita Sierra and M.C. Jones) testified that petitioner, with several other men, was involved in their kidnaping, and the kidnaping and fatal beating of the third victim (Patrick Banks), who had broken into petitioner's vehicle and stolen audio equipment. (Exh. E at 2-4). In fact, their testimony showed that petitioner was the ringleader of the crimes.

14

Sierra and Jones each testified that petitioner and several other men kicked in the door to Jones's apartment and that petitioner tied a rope around each of their necks. (*Id.* at 3). They were taken to a vehicle with a broken window, questioned about the stolen audio equipment, and driven to a Chicago Housing Authority (CHA) property, where Banks was later brought and beaten. (*Id.* at 4). Sierra and Jones each testified that petitioner instructed the other assailants to let them (Sierra and Jones) go. (*Id.*). Sierra testified that when the group broke into Jones's apartment, petitioner said: "get those mother fuckers that broke into my truck," and, when Banks tried to run from being beaten, told the others to "get that motherfucker." (*Id.* at 3, 4).

Some of these details were corroborated by other testimony. A friend of the victims testified he saw Jones and Sierra with ropes around their necks being held by a black man who was accompanied by several others armed with bats and sticks. (*Id.* at 3-4). Chicago police detective Szudarski testified that Jones and Sierra each identified petitioner from a photo array and in a live line-up. (*Id.* at 5). When the detective interviewed Sierra approximately three weeks after the crime, she had ligature marks on her neck. (*Id.*).

Petitioner testified that he contacted a business partner named Boyd, and later met him at the CHA property. Boyd introduced petitioner to Jones, who willingly accompanied petitioner to find the equipment stolen from his vehicle. (*Id.* at 6). Boyd later told petitioner that "someone had been beat-up." (*Id.*).

Chicago police detective Cleason testified that petitioner told him the beating and kidnaping were his fault and that he was responsible for the man's death, although he did not admit to taking part in, or ordering, the crimes. (*Id.* at 9-10). Petitioner told Cleason that he had called his cousin, a high-ranking member of the Gangster Disciples, after learning of the theft and that he was waiting outside Jones's apartment with Boyd when the three victims were brought down. (*Id.*).

It is black letter law that the testimony of a single eyewitness is sufficient to convict, even if that witness is impeached. *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). "To demonstrate innocence so convincingly that no reasonable jury could convict, a petitioner must have documentary, biological, or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes*, 403 F.3d at 938. Given the firm testimony of the victims, as corroborated by the testimony of other witnesses and petitioner's statements to the police, it cannot be said that no reasonable trier of fact could have convicted petition even assuming the witnesses to whom petitioner refers would have testified in an exculpatory manner. *See Hayes*, 403 F.3d at 938 (even if counsel had called petitioner's proposed alibi witnesses, a reasonable fact finder could have believed the identifying witnesses). Therefore, no exception allows this Court to address petitioner's defaulted claims.

## MERITS

### STANDARD OF REVIEW

16

_____Under the Antiterrorism and Effective Death Penalty Act (AEDPA), this Court may grant habeas relief only if the state court's "decision was contrary to, or involved an unreasonable application of, Supreme Court precedent," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Virsnieks v. Smith*, 521 F.3d 707, 713-714 (7th Cir. 2008);  28 U.S.C. § 2254(d)(1)-(2).  To grant habeas relief under the "contrary to" clause, a habeas court must find that "'the state court arrive[d] at a conclusion opposite to that reached by the [Supreme] Court on a question of law' or 'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court].'"  *Jackson v. Miller,* 260 F.3d 769, 774 (7th Cir. 2001) (citing *Williams v. Taylor,* 529 U.S. 362, 405 (2000)).

To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court "'identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case' or 'if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not have applied or unreasonably refuses to extend that principle to a new context where it should apply.'"  *Jackson,* 260 F.3d at 774 (citing *Williams*, 529 U.S. at 407).

The state court's factual findings are presumed correct; this presumption can be rebutted only by clear and convincing evidence.  *Miller-El v. Cockrell,* 537 U.S.

322, 348 (2003); *Barrow v. Uchtman,* 398 F.3d 597, 603 (7th Cir. 2005); *Lambert v. McBride*, 365 F.3d 557, 561 (7th Cir. 2004); *see also* 28 U.S.C. § 2254(d)(2) (habeas relief shall not be granted unless the adjudication of the claim in state court "was based on an unreasonable determination of the facts in light of the evidence presented");  28 U.S.C. § 2254(e)(1) (state court factual findings "shall be presumed to be correct" and the petitioner bears the burden of rebutting the presumption "by clear and convincing evidence").  The clear-and-convincing-evidence standard is satisfied if evidence shows that a fact is "highly probable."  *See United States v. Boos*, 329 F.3d 907, 911 (7th Cir. 2003) ("highly probable" is the Supreme Court's definition of "clear and convincing evidence").  In short, under the unreasonable application clause, the state court decision must be both incorrect and unreasonable.  *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2005*); Washington v. Smith,* 219 F.3d 620, 628 (7th Cir. 2000).  That is, that state court's judgment must lie "well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762 (citing *Williams*, 529 U.S. at 411).

## ARGUMENT

Petitioner's sole preserved claim (Claim 1) is that the trial court failed to adequately inquire into his pro se allegations of ineffective assistance of counsel for failing to investigate certain witnesses before declining to appoint new counsel to

represent him on his post-trial motion.  (Pet. at 5-5b).[3]  This claim fails for two reasons.  First, it fails to allege a violation of firmly established Supreme Court precedent.  Alternatively, the state court's judgment is reasonable.

Petitioner's claim in this Court is not that he was denied the effective assistance of counsel.  Rather, here, as in the state appellate and supreme courts, petitioner claims specifically that the trial court failed adequately evaluate his ineffective assistance claim before determining not to appoint separate counsel to argue that claim.  This claim is distinct from the underlying ineffective assistance claim.  *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (assertion that counsel was ineffective for failing to pursue certain issues is separate and independent of those issues).  When recently addressing a similar claim, this Court ruled that the underlying claim of ineffective assistance was exhausted and not

---

[3]  While petitioner noted that he raised other grounds of ineffective assistance in his state post-trial motion, his petition specifies only his claim that counsel failed to investigate certain potential defense witnesses.  (Pet. at 5b-5c).  In the Seventh Circuit, ineffective assistance of counsel is a single claim that may have multiple factual bases.  *Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006).  Nevertheless, a petitioner must properly preserve every factual basis concerning his counsel's performance.  *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).  Here, and on direct appeal before the intermediate appellate court and PLA, petitioner specified only his claim that counsel failed to investigate potential defense witnesses.  (Exh. B at 20, 23; Exh. F at 14-19).  But, the Seventh Circuit requires petitioner's to "present both the operative facts and the legal principles that control each claim to the state judiciary."  *Stevens*, 489 F.3d at 893-94 (7th Cir. 2007) (quoting *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001).  Therefore, any reliance on other alleged grounds for ineffective assistance presented in petitioner's post-trial motion are defaulted.  *Stevens*, 489 F.3d at 894; *see also Lewis v. Sternes*, 390 F.3d 1019, 1028-32 (7th Cir. 2004) (analyzing separately default of various alleged grounds for ineffective assistance).

defaulted when, in the state courts, a petitioner alleged that the trial judge should have held a hearing on his post-trial claims of counsel's ineffectiveness. *Wells v. Bartley*, 02 C 2536, 2008 WL 2080329 at *12-*13 (N.D. Ill., May 16, 2008). In doing so, this Court noted that a defendant on appeal requests a new post-trial hearing not for its own sake, but so that the merits of his claims can be addressed at the hearing, and that an appellate court's decision regarding a new hearing involves a threshold evaluation of the underlying ineffectness claim. *Wells*, 2008 WL 2080329 at *12-*13 (citing *United States ex rel. Sumner v. Washington*, 840 F. Supp. 562, 570-71 (N.D. Ill. 1993).

However, the question in the instant case is not one of exhaustion or default. Respondent agrees that petitioner raised the same claim in the state appellate and supreme courts as he does here. Rather, the question is what claim petitioner is making in this Court, and what petitioner must show to prevail on his claim that the trial judge denied his ineffective assistance allegations without appointing separate counsel following an insufficient review of those allegations. As noted above, petitioner must show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. *Jackson,* 260 F.3d at 774. To do so, he must show that the Supreme Court has clearly established the propositions essential to his position. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999). A rule is not clearly established unless it was compelled by existing precedent. *Schaff*, 190 F.3d at 522. In short, "petitioner must have a Supreme

Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal." *Id.* Where Supreme Court cases "give no clear answer to the question presented . . . 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'" *Wright v. Van Patten*, 128 S.Ct. 743, 747 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654 (2006).

Petitioner has cited to no Supreme Court case holding that a trial judge must appoint separate counsel to aid a defendant in arguing post-trial claims of ineffective assistance or setting forth the standard applicable to a determination of whether such allegations warrant counsel, and respondent has found none. (Pet. at 5-5b). In the state appellate court, petitioner relied completely on state precedent setting forth the state rule on the matter. (Exh. B at 20-25). The only Supreme Court case mentioned, *Strickland v. Washington*, 466 U.S. 668, 691 (1984), was cited for the proposition that counsel needs to make reasonable investigations and decisions, not to set forth any rule regarding the appointment of counsel on pro se allegations of ineffective assistance. (Exh. B at 22). Moreover, *Strickland* sets forth no law on this latter issue. *See generally Strickland*, 466 U.S. 668. His PLA and the instant petition also cite *Wiggins v. Smith*, 539 U.S. 510, 533 (2003), for the proposition that "'tactical' decisions of trial counsel 'must be directly assessed for reasonableness in all the circumstances.'" (Exh. F at 18; Pet. at 5b). Again, neither *Strickland* nor *Wiggins* involved the standard for appointing counsel to argue pro se

claims of ineffective assistance.  *See generally Wiggins*, 539 U.S. 510 and

*Strickland*, 466 U.S. 668.  The state appellate court (the last state court to address

petitioner's claim on the merits) held that the trial judge had sufficiently addressed

petitioner's post-trial pro se claims pursuant to the state rule without appointing

separate counsel, and petitioner had cited no Supreme Court rule to call that

holding into question.  (Exh. E at 17-20).  Therefore, petitioner's claim fails because

no clearly established Supreme Court precedent required the state trial court to

appoint counsel to argue petitioner's post-trial motion.  *Wright*, 128 S.Ct. at 747;

*Musladin*, 127 S.Ct. at 654.  Therefore, the state court holding is neither contrary to

nor an unreasonable application of clearly established Supreme Court precedent.

Alternatively, the state appellate court reasonably determined that

petitioner's underlying ineffective assistance claim was meritless, and that

appointment of counsel to argue petitioner's post-trial motion was therefor

unnecessary.  The Sixth Amendment guarantees to criminal defendants the right to

effective assistance of trial counsel.  *Strickland,* 466 U.S. at 686.  *Strickland* is

"clearly established" Supreme Court precedent that is accorded deference under §

2254.  *Williams*, 529 U.S. at 391 (2000); 28 U.S.C. § 2254(d).  In raising an

ineffective assistance claim, petitioner must identify specific acts or omissions by

counsel, and the court evaluates the allegations using a two-pronged test: (1)

whether counsel's performance fell below the objective standard of reasonable

representation under the circumstances; and (2) whether there is a reasonable

probability that, but for the errors, the proceeding would have had a different result. *Strickland*, 466 U.S. at 688, 690, 694. Under § 2254(d), a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state appellate court] applied *Strickland* to his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (internal citations omitted); *see also Johnson v. Loftus*, 518 F.3d 453, 457 (7th Cir. 2008) (*Strickland* review of counsel's performance is "highly deferential" even before § 2254(d)(1) deference is added); *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) ("*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard"); *Stevens*, 489 F.3d at 906 (quoting *Holman*).

In his pro se post-trial motion, petitioner named five witnesses whose testimony allegedly would have bolstered his defense. (Exh. A at 4).[4] However, apart from his bald allegations, petitioner presented the state courts with no affidavits or other evidence demonstrating that these witnesses would have testified

---

[4] When naming one of these five witnesses, Melinda Latham, petitioner states that "(3) more witnesses" could provide proof that he was not present when Patrick Banks was beaten, but he does not name or otherwise identify these three other witnesses. (Exh. A at 4).

as he claims. (Exhs. A, B, D, & F). Likewise, he has presented no corroborating evidence to this Court. (Pet., *generally*). Moreover, according to petitioner, three of the five witnesses — Deeon Boyd, Allan Shanklin, and "Draino" — were directly involved in the retaliatory attack on the three victims. (Pet. App. at 25-26; Exh. A at 4). Thus, it is highly possible, if not probable, that these persons would have declined to testify pursuant to the Fifth Amendment. Also, while petitioner claims that his sister lived in the building where the kidnaping occurred, he makes no claim that she witnessed any of the events. (*Id.*). In sum, petitioner's claim is supported by nothing but his self-serving allegations.

Consistent with this lack of support, the state appellate court held that the trial court had conducted a sufficient inquiry and that petitioner's claims were insufficient to warrant appointment of separate counsel. (Exh. E at 17-20). That court noted that it had reviewed the record, including the transcript of the post-trial hearing, and that petitioner was allowed to present a lengthy argument on his ineffective assistance claim. (Exh. E at 19, 22). It noted that petitioner had testified in his own behalf and never mentioned the allegedly exculpatory evidence when he was asked about individuals and events during that testimony. (*Id.* at 19). Moreover, it found the evidence against petitioner overwhelming. (*Id.* at 15-16). This finding is consistent with the evidence set forth above. (*Supra* at 14-16). As further noted above, according to petitioner, several of the witnesses he claims should have been called were themselves involved in the crimes. (*Supra* at 24).

26

Therefore, counsel could reasonably have concluded that it would have been dangerous to call them.  *See Flieger v. Delo*, 16 F.3d 878, 886 (8th Cir. 1994) (trial counsel not objectively unreasonable for failing to call a witness whose testimony might have done habeas petitioner more harm than good); *Thirston v. Gilmore*, 986 F.Supp. 491, 501 (N.D. Ill. Nov. 18, 1997) (when witnesses might have given potentially damaging testimony, it was sound trial strategy not to call them; disagreement with that strategy, as a matter of law, could not form basis of an ineffectiveness claim).  In light of all this, it cannot be said that the state appellate court's judgment was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the petition for writ of habeas corpus with prejudice. Should this Court find preserved for habeas review either of the claims respondent argues are defaulted, respondent requests thirty days from the entry of the Court's order rejecting the defaults to address the claim(s) on the merits in a subsequent pleading.


June 27, 2008                              Respectfully submitted,

                                          LISA MADIGAN
                                          Attorney General of Illinois

                          By:    s/JAY PAUL HOFFMANN_____
                                 JAY PAUL HOFFMANN, Bar # 6203142
                                 100 West Randolph Street, 12th Floor
                                 Chicago, Illinois 60601-3218
                                 PHONE: (312) 814-3421
                                 FAX: (312) 814-5166
                                 E-MAIL: jhoffmann@atg.state.il.us

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I electronically filed respondent's ANSWER with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on this date, I mailed the same document by United States Postal Service to the following non-registered participant:

> Milton Jones, No. K51342
> Stateville Correctional Center
> Route 53
> P.O. Box 112
> Joliet, IL 60434

By:  s/Jay Paul Hoffmann_____
     Jay Paul Hoffmann, Bar # 6203142
     100 West Randolph Street, 12th Floor
     Chicago, Illinois 60601-3218
     Phone: (312) 814-3421
     Fax: (312) 814-5166
     E-mail: jhoffmann@atg.state.il.us